UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ROY MICHAEL BRAUNINGER                          CIVIL ACTION

VERSUS                                          NO.  05-0688

DEFAULT MANAGEMENT SOLUTIONS, L.L.C.            SECTION  "N"  (3)
AND DAVID MOTES

## ORDER

Presently before the Court are:  (1) the Motion to Strike Inadmissible Evidence filed by Defendant Default Management Solutions, L.L.C. , d/b/a First American Loss Mitigation Services ("FALMS") (Rec. Doc. No. 74);  (2) the Cross-Motion to Strike Inadmissible Evidence filed by Plaintiff, Roy Michael Brauninger (Rec. Doc. No. 92);  (3) FALMS' Motion for Summary Judgment (Rec. Doc. No. 46);  and (4) Defendant W. David Motes' Motion for Summary Judgment (Rec. Doc. No. 47). **IT IS ORDERED** that FALMS' motion to strike is **GRANTED IN PART** and **DENIED IN PART**, and that Plaintiff's motion to strike is **DENIED**. **IT IS FURTHER ORDERED** that  FALMS' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**;  Motes' motion for summary judgment is **DENIED**.

# **BACKGROUND**[1]

Plaintiff has sued Defendant FALMS for race, gender, and age discrimination based on his termination from employment, on or about May 4, 2004.  Plaintiff also has sued both FALMS and Defendant Motes for defamation.

Plaintiff, a white male, applied for employment with FALMS in 2003.   Human Resources Manager Amy Williamson conducted one or more telephone interviews with Plaintiff and solicited reference information to be used in the interview process.  Thereafter, following a personal interview with Rick Roniger, Executive Vice-President and Manager of the New Orleans branch office, Plaintiff was hired, and commenced employment with FALMS as a  "Freddie Mac" client manager on or about March 17, 2003.  At that time, Plaintiff was 50  years old.  Roniger, also a white male, was 51 years of age;  Williamson, a white female, was in her thirties.

At FALMS, Plaintiff supervised analysts and processors working to assist clients in avoiding foreclosure.   On April 28, 2004, Angelica Jeter, a New Orleans FALMS employee, called the Human Resources Department, which is located outside of Louisiana, to report a co-worker's (Jodi Bourgeois) potential sexual harassment complaint against Plaintiff.  Two days later, Bourgeois personally called the Human Resources Department to complain about Plaintiff.  Based on these calls, Williamson decided to travel to the New Orleans office to investigate the matter.

After interviewing nine employees in the New Orleans FALMS office on May 3-4, 2004, including Jeter, Bourgeois, David Motes, and Plaintiff, Williamson discussed the results of

---

[1]        Given the parties' familiarity with the factual background of this dispute, the Court will only provide a brief summary of certain pertinent facts.   The parties' recitation of the relevant factual information can be found in the memoranda submitted in connection with their motions.  *See* Rec. Doc. Nos. 46-2, 46-5, 47-2, 70-3, 70-4, 77-3, and 80 (motions for summary judgment), and 74-2, 84-2, 85-2, 87,  86, and 90-2 (motions to strike).

those interviews by telephone with her supervisor, Judy Ellison, and Roniger, who was out-of-town at the time.  It was decided that Plaintiff should be terminated immediately.  Williamson informed Plaintiff of this decision mid-day on May 4th.  Thereafter, Plaintiff received a letter from Williamson, dated May 6th, stating that her investigation revealed that Plaintiff had engaged in "inappropriate conduct and conversations with [his] former subordinates in both privately held conversations and during a departmental meeting" that had "created an offensive, hostile working environment," and warranted immediate termination.[2]  Williamson's May 4, 2004 notes from her interviews further state that the persons she had interviewed were uncomfortable with Plaintiff's actions, and that those actions had placed FALMS at risk.[3]  Thus, FALMS "had no choice" but to terminate Plaintiff.[4]

Plaintiff denies that he acted or spoke in a sexually harassing manner with respect to any of his former subordinates.  He responds that the persons interviewed, except Bourgeois, had been disciplined in some manner by him and were "malcontents harboring resentment toward him."[5] He additionally points to Motes – who also had interviewed for the position for which Plaintiff ultimately was hired, and later was demoted by Plaintiff  –  as the origin of most of the "bad

---

[2]     *See* May 6, 2004 Williamson Letter to Brauninger, Exhibit 6 to FALMS' Memorandum in Support of Motion for Summary Judgment ("FALMS Mem.").

[3]     *See* Williamson's notes entitled "Complaint of sexual harassment against Mike Brauninger 5/5/04" ("Investigation Notes"), Exhibit 5A to FALMS' Mem.,  at FALMS000232.

[4]     *Id.*

[5]     *See* Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Opp.) at 3.

information" about him.[6]   Except with respect to Bourgeois, Plaintiff essentially contends that the other employees told Williamson negative things about him because they were unhappy with his discipline and/or demotions of them.[7]   Plaintiff further maintains that FALMS' stated reason for his termination is false, and that he actually was terminated because of gender, race, and/or age discrimination.

## LAW AND ANALYSIS

### I.  Motions to Strike

#### A.  FALMS' Motion to Strike

FALMS asks the Court to strike ¶¶3, 28, and 30 of Plaintiff's August 20, 2006 Declaration, Exhibit 1-A to his Opposition, on grounds that Plaintiff lacks personal knowledge with respect to the matters asserted therein.   These statements are as follows:

> 3.      I submitted my resume online to First American.  I was contacted by Amy Williamson and had two brief phone conversations with her.  She scheduled a personal interview for me with Rick Roniger.  The interview lasted between an hour to two hours.  I was hired on Rick Roniger's recommendation.  I never physically met Amy Williamson at that time.

FALMS asserts that, as a job applicant, Plaintiff had no knowledge of who recommended him for the position for which he ultimately was hired.  On the showing made, and for purposes of the pending motions for summary judgment, FALMS' motion to strike is **DENIED**

---

[6]      *Id.*

[7]      Plaintiff has no explanation for Bourgeois's motivation to say allegedly untrue things about him.  He contends that, give the nature of and differences in their employment positions, they actually had very little interaction.

with respect to ¶3.  The Court understands there to be no significant dispute that Williamson had initial telephone conversations with Plaintiff, and then arranged for Plaintiff to have a "face-to-face" interview with Roniger.  Thus, based on the limited information that the parties have provided the Court on the issue, it appears that Williamson recommended that Plaintiff proceed to the next step of the interview/hiring process, and that Roniger, after interviewing Plaintiff, was of the opinion that Plaintiff should be hired.  As the applicant, it is not unlikely that Plaintiff became aware of this information as part of the hiring process.   On these facts, the Court finds no harm in allowing Plaintiff to characterize Roniger's actions as "recommending" that he be hired.  In any event, the Court does not find the issue to be particularly significant in resolving the pending motions for summary judgment.

> 28.    I went to Williamson's boss, Judy Ellison, to appeal my termination.  Ms. Ellison did not speak to anyone different from Williamson.

Ellison has stated that she interviewed three analysts not previously interviewed by Williamson.  Plaintiff apparently disagrees.  FALMS asserts that Plaintiff has no personal knowledge with respect to whom Ellison did or did not interview as part of her consideration of Plaintiff's appeal of his termination.  The Court agrees and, therefore, strikes the second sentence of ¶28.

> 30.    I went to the EEOC. Margaret Heist, a white female in her fifties, accompanied me to the EEOC because she had also been terminated and was replaced by two young men, one in his mid-twenties and on in his early thirties.  I understand that William Price, a 25-year-old white male, and Kim Schroeder, a 32-year old white female, took over my position.  I informed the EEOC of this, and the EEOC made my claim an age discrimination claim.

FALMS objects to Plaintiff's assertions regarding Price and Schroeder, contending that he has no personal knowledge of who took over his job duties.  To the extent that the statement is offered to demonstrate that these individuals in fact assumed Plaintiff's job duties, the motion is **GRANTED**.[8]  Plaintiff has not demonstrated that he has personal knowledge of his replacement(s).[9]

Asserting that 28 U.S.C. §1746 contemplates submission of a written document, FALMS also seeks to strike Plaintiff's Oral Declaration, Exhibit 1-B to his Opposition, in its entirety.  Under the present rules and statutes, the Court declines to treat Plaintiff's oral declaration as a declaration satisfying the requirements of 28 U.S.C. §1746.  Thus, this aspect of FALMS' motion is **GRANTED**.  The Court notes, however, that Plaintiff's August 20, 2006 written declaration contains most, but not all, of the statements contained in his oral declaration.  If Plaintiff would like to supplement his written declaration to include the additional statements, or affix the statements and signature required by §1746 to a transcription of the oral declaration, the Court shall allow him seven (7) working days from entry of this Order to do so.

### B.  Plaintiff's Cross Motion to Strike Inadmissible Evidence

---

[8]     To the extent that the Plaintiff simply states what his *understanding* is about his replacement, Plaintiff certainly has personal knowledge of that information.  It is not clear, however, that the mere fact of Plaintiff's understanding of the identity of his replacement(s) has any legal relevance.

[9]     The Court notes that Amy Williamson's Declaration states that the majority of Plaintiff's job duties, particularly overseeing and supervising the analysts,  were assumed by Craig Wenk.  According to Williamson, Kim Schroeder did serve as a supervisor of the processors after Plaintiff's termination.  *See* Williamson's July 28, 2006 Declaration, ¶¶ 9-10, Exhibit 5 to FALMS' Mem.

6

Plaintiff asks the Court to strike: (1) Williamson's Declaration, (2) Williamson's May 4, 2004 investigative notes, (3) Plaintiff's termination letter from Williamson, (4) Ellison's Declaration, and (5) Ellison's letter to Plaintiff regarding her appeal investigation. These documents are Exhibits 5, 5-A, 6, 7, and 8 to FALMS' memorandum in support of its motion for summary judgment.

Plaintiff's motion is **DENIED**. The two declarations comply with the requirements of 28 U.S.C. §1746, are based on personal knowledge, and serve to authenticate and to verify the documents attached to them. The investigative notes and the letters qualify as business records under Rule 803(6) of the Federal Rules of Evidence, and were prepared near or at the time of the investigations.

Nor does the reference to possible litigation in Williamson's notes somehow render them inadmissible. There is no dispute that one of Williamson's duties as Human Resources Manager was to investigate complaints of possible sexual harassment. Recordation of the course and results of those investigations, including a reference to possible litigation, in the form of investigative notes is not an unusual or unreasonable practice for personnel charged with this task, and likewise does not render the information contained therein inadmissible.

With regard to the statements by other FALMS employees that are recorded in Williamson's and Ellison's notes, and are being offered against Plaintiff, those statements are non-hearsay to the extent that they are simply offered as evidence of what was said to Williamson and Ellison. Insofar as they are offered solely for the purpose of establishing a legitimate and

nondiscriminatory reason for Plaintiff's termination, as will be discussed in connection with FALMS' motion for summary judgment, this is the only function that they serve.

## II.  Motions for Summary Judgment

### A.  Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56 (c).  The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986);  *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S. Ct. 2553;  *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed.2d 538 (1986);  *Auguster v. Vermillion Parish School Bd.,* 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party.  *Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (2001).  Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted).  The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed.2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court.").  Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.  *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195 (1994).

9

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little,* 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

### B.    Discrimination

Under the burden shifting regime articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), the plaintiff must first establish a prima facie case of discrimination. *Abarca v. Metro. Transit Auth.,* 404 F.3d 938, 941 (5th Cir. 2005); *Okoye v. Univ. of Tex. Houston Health Science Ctr.,* 245 F.3d 507, 512 (5th Cir. 2001). Once established, the prima facie case raises a presumption of discrimination, which the defendant must then rebut by demonstrating a legitimate, nondiscriminatory reason for its actions. *Okoye,* 245 F.3d at 512. If the defendant satisfies this burden, the presumption disappears, and the plaintiff must show that the defendant's reason is a pretext for discrimination. *Id.*

With regard to pretext, the "mixed-motives" approach applies when a plaintiff argues that discrimination was a motivating factor, if not the sole motivating factor, for the defendant's actions. Thus, a plaintiff seeking to rebut an employer's legitimate, nondiscriminatory reason for an employment action must "offer sufficient evidence to create a genuine issue of material fact that (1) the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative);

10

or (2) the defendant's reason, while true, is only one of the reasons for its conduct, and another

motivating factor is the plaintiff's protected characteristic (mixed-motives alternative)." *See Rachid*

*v. Jack in the Box, Inc.*, 376 F. 3d 305, 310-313 (5th Cir. 2004) (internal citations omitted); *see also*

*Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S. Ct. 2148 (2003). Under appropriate circumstances,

"a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted

justification [for the adverse employment action at issue] is false, may permit the trier of fact to

conclude that the employer unlawfully discriminated" against the plaintiff. *Reeves v. Sanderson*

*Plumbing Products, Inc.*, 530 U.S. 133, 148, 120 S. Ct. 2097, 2109 (2000).

   If the plaintiff carries his burden of presenting a genuine issue of material fact as to

pretext, or that his protected characteristic was a motivating factor for the adverse action, the

defendant, to defeat the plaintiff's claim, must show that the same action would have been taken

regardless of the impermissible motivating factor. *Rachid*, 376 F.3d at 312-13. The employer's final

burden is effectively that of proving an affirmative defense. *Richardson v. Monitronics Int'l, Inc.*,

434 F.3d 327, 333 (5th Cir. 2005).

   A plaintiff makes a prima facie case for discrimination by proving that (1) he is a

member of a protected class; (2) he was qualified for the position; (3) he suffered adverse

employment action; and (4) he was replaced by someone outside the protected class or, with

disparate treatment, that others similarly situated were treated more favorably. *Abarca,* 404 F.3d

at 941; *Okoye,* 245 F.3d at 512-13 (citing *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398,

404 (5th Cir.1999)). Here, Plaintiff offers very little discussion of a prima facie case in his

opposition memorandum.   Indeed, with regard to his race discrimination claim, there is no suggestion that Plaintiff was replaced by someone of a different race.   Rather, the persons that Plaintiff contends assumed his supervisory duties are white.   With regard to his age and gender discrimination claims, the parties disagree whether William Price, who is in his twenties, or Craig Wenk, who is in his fifties,  assumed supervision of the analysts.  All agree, however, that both Price and Wenk are male.  And, although Price is much younger than Plaintiff, Plaintiff's declaration, as stated above, does not establish his personal knowledge of Price's assumption of these duties.  Nor does his opposition point to admissible evidence in support of this assertion.  On the other hand, it is undisputed that Schroeder, a white female in her early thirties, began supervising the processors after Plaintiff's termination.  In any event, the Court assumes, for purposes of considering FALMS' motion, that Plaintiff can establish a prima facie case.

FALMS' assertion that Plaintiff was terminated based on a finding that he had engaged in "inappropriate conduct and conversations with [his] former subordinates in both privately held conversations and during a departmental meeting" constitutes a legitimate non-discriminatory reason for the termination.  Thus, the relevant inquiry becomes whether Plaintiff has established that a genuine issue of fact exists as to the truthfulness of this reason or, instead, that another motivating factor for his termination is one or more of his protected characteristics.  The Court finds that Plaintiff has not borne his burden at this level of the summary judgment inquiry.

Significantly, the Court's role in evaluating the reason offered by FALMS for Plaintiff's termination is limited.  Because Plaintiff was an "at will" employee, FALMS was free to

discharge him at any time as long as the reason for his discharge was not an unlawful one.   Hence, the Court only considers whether a genuine issue of material fact exists with respect to FALMS' stated reason for Plaintiff's discharge within the confines of the legal framework developed for evaluating employment discrimination claims.   Further, although Plaintiff vehemently denies the truth of the assertions that his former subordinate employees made about him to Williamson, the actual truthfulness of these statements is not for the Court, or the jury, to decide in connection with Plaintiff's discrimination claim.   Rather, the inquiry is simply whether the persons who decided, on behalf of FALMS, to terminate Plaintiff had a good faith belief in the truthfulness of the information gained from the investigation of the complaint made against Plaintiff, and that it was that information that resulted in the termination decision.

Plaintiff attacks FALMS' termination decision on several grounds.   He contends that the investigation was flawed, and that Williamson's and Ellison's notes regarding that investigation are not appropriately considered by the Court.   He also maintains that Williamson, in particular,  had discriminatory motives for concluding that he should be fired.

Addressing the investigation of the complaint against Plaintiff first, the Court finds no triable issue with respect its legal adequacy.   Plaintiff is correct that the notes from the investigation suggest a significant amount of gossiping was occurring amongst several of the persons interviewed by Williamson, and that Motes appears to be at the center of much of it.   Nevertheless, Williamson's notes reflect that with each witness, she distinguished between first-hand information and information that come from another employee or other employees.   Further, with each of the

four offenses attributed to Plaintiff in Williamson's notes and FALMS' EEOC response, Williamson

received first-hand information from one or more employees about each.[10]

        Nor does the fact that the first complaint to the Human Resources Department simply

reported something that Jeter had heard was said by Plaintiff about another employee render the

entire investigation defective.   FALMS, as an employer, for both practical and legal reasons, must

respond appropriately to such reports.   When a second telephone call regarding the situation was

received from the subject employee, Bourgeois, Williamson justifiably decided an investigation of

the matter was warranted.   Additionally, as discussed in connection with Plaintiff's motion to strike,

that Williamson's investigation notes report a threat of litigation being made near the end of the

investigation does not render Williamson's notes inadmissible, or otherwise diminish their

significance to the Court's inquiry.

---

[10]    Williamson's September 3, 2004 letter to the EEOC states that the investigation of the complaint against Plaintiff revealed:

> (1) He encouraged one of his supervisors [Nancy Stroebel] to hire a less qualified candidate because of her appearance and the size of her breasts; (2) He made inappropriate comments to one of his male subordinates [David Motes] about other female employees in relation to their body parts; (3) He made derogatory comments in a staff [analysts] meeting about one of our female clients; (4) He made numerous inappropriate, sexual comments to a female subordinate [Jodi Bourgeois] that made her, and others in Mr. Brauninger's department, extremely uncomfortable.

*See* September 3, 2004 Williamson Letter to Charlotte Hokkanen, Investigator, Equal Employment Opportunity Commission, Exhibit 12 to Plaintiff's Opp.  *See also* Williamson Investigation Notes, Exhibit 5A to FALMS' Mem., at page 7 (FALMS000232) (similarly listing the four reasons for termination decision).

Plaintiff also repeatedly disputes the reliability of the investigation because, according to him, only employees who had been disciplined or demoted by him were considered, and that other "neutral" employees should have been interviewed. Although additional investigation efforts arguably may have been appropriate under the circumstances, including Plaintiff's apparently successful and previously complaint-free employment history, the Court cannot say that more employee interviews, or a longer, more in-depth interview of Plaintiff himself, were legally required. Again, as long as FALMS did not terminate Plaintiff for an unlawful reason, it was free to terminate him at any time for any reason. On the evidence obtained from the employees interviewed by Williamson and the three additional employees interviewed by Ellison, FALMS had a reasonable basis for deciding that Plaintiff's continued employment presented a risk of legal liability that FALMS did not want to bear any longer.

Furthermore, despite Plaintiff's assertions that other employees should have been interviewed, he has not identified any such employees by name, or offered affidavit or other testimony from them that supports the invalidity of FALMS' termination decision, in opposing FALMS' motion for summary judgment. Similarly, although Plaintiff criticizes FALMS' failure to include an affidavit or other sworn testimony from Jodi Bourgeois regarding the allegations she made against him to Williamson and Ellison, Plaintiff bears the burden of proof at this stage of the Court's inquiry. If Plaintiff believes such testimony would somehow call the legal validity of FALMS' termination decision into question, it was for Plaintiff to obtain and put forth that testimony.

15

The Court likewise disagrees with Plaintiff's contention that Ellison's efforts in investigating the complaints against him were flawed because she did not conduct a second, comprehensive investigation completely independent of that conducted by Williamson. Rather, after talking with Plaintiff regarding his objections to Williamson's investigation and the resulting termination decision, Ellison undertook to address those objections by interviewing three additional witnesses and conducting a second interview of Jodi Bourgeois. Given that the results of these interviews were consistent with the information gathered by Williamson, Ellison determined that no further review or investigation was necessary. On the showing made, the Court finds no triable issue with respect to the reasonableness of Ellison's decision to proceed in this fashion.

Plaintiff additionally offers various vague assertions regarding Roniger's prior lack of awareness of any employee complaints against Plaintiff, and the extent of his involvement in the decision to terminate Plaintiff. The summary judgment evidence presented, however, does not reveal that the complaining employees' decisions to communicate those complaints to the Human Resources Department, rather then the manager of the New Orleans office, present a triable issue with respect to FALMS' termination decision. Regarding Roniger's role in the termination decision, Williamson's and Ellison's declarations and investigation notes reveal that the termination decision was made by Williamson, Ellison, and Roniger. To the extent that Plaintiff may dispute the degree of Roniger's actual involvement in this decision, Plaintiff has not adequately articulated that position, its legal significance, or its evidentiary support in his opposition memorandum.

FALMS' policy of utilizing progressive disciplinary measures likewise does not render Plaintiff's immediate termination suspect.  FALMS' "Corrective Action and Performance Improvement" document and its Employee Handbook clearly state that "physical and/or verbal sexual or other harassment of another individual" may subject an employee to "immediate termination.[11]    Nor has Plaintiff presented evidence demonstrating that persons outside of his protected classes have been treated differently for the same or similar conduct.

Various additional facts pointed to by Plaintiff likewise do not establish a triable issue with respect to the truthfulness of FALMS' proffered rationale for Plaintiff's termination. Specifically, Plaintiff emphasizes that approximately 80% of the employees in the FALMS New Orleans office were minorities, and that the number of white employees had declined.  These numbers by themselves are not legally significant, particularly given that Plaintiff was just hired fourteen months earlier.

On the showing made, the Court similarly declines to attribute legal significance to the fact that Williamson is or has been married to black man and an Hispanic man, and chose to share this information, and that she had children with these men, as part of an "icebreaker" exercise during a FALMS seminar occurring in the early days of Plaintiff's employment.  Nor is the Court persuaded that Williamson's height or weight, or that she graduated from Baylor University, possibly played an impermissible role in her actions in connection with the investigation and Plaintiff's

---

[11]    *See* 8.14 Corrective Action and Performance Improvement at FALMS000221, Exhibit 11 to Plaintiff's Opp. (Rec. Doc. No. 70-16);  The First American Way, An Employee Handbook, "Prohibited Conduct" at FALMS 000108, Exhibit 3 to FALMS' Mem.

termination.  The same is true with respect to Plaintiff's assertion that she raised her voice in an intimidating manner, and appeared angry, during their discussions occurring in connection with her investigation.

Finally, the Court recognizes that Plaintiff worked for 30 years with a number of female employees and minorities prior to being hired at FALMS without any sexual harassment complaints being made against him.  Indeed, Plaintiff's references provided in connection with his employment application with FALMS, including one from his former female assistant, support the notion that Plaintiff was an effective and popular manager.  In addition, during the time that he had been employed at FALMS, Plaintiff received a raise that was higher than usual.  While of some relevance, this information is not sufficient to create a genuine issue of material fact with respect to whether the persons terminating Plaintiff had a good faith basis for believing that Plaintiff had acted in a manner violative of FALMS' sexual harassment policy during the time that he was employed at FALMS, and acted based on those beliefs.  As the Court has previously stated, it is these questions, and not the actual truthfulness of the assertions made against Plaintiff by his subordinate employees, that are determinative of the success of Plaintiff's discrimination claims.

## C.     Defamation

Defamation "involves the invasion of a person's interest in his or her reputation and good name." *Trentecosta v. Beck*, 703 So. 2d 552, 559 (La. 1997).  To prevail on a defamation claim, a plaintiff must establish:  (1) a false and defamatory statement,  (2) publication to a third party, (3) falsity, (4) fault (negligence or greater, including actual  malice), and (5) resulting injury.

*Rouly v. Enserch Corp.*, 835 F.2d 1127, 1129 (5th Cir. 1988).  "Language is defamatory when it tends to expose the plaintiff to contempt, hatred, ridicule or obloquy, or causes [him or her] to be shunned or avoided, or has a tendency to . . . injure [him or her] in [his or her] occupation."  *Martin v. Lincoln Gen'l Hosp.*, 588 So. 2d 1329, 1332 (La. App. 2 Cir. 1991), *writ denied*, 592 So. 2d 1329 (La. 1992).   An employer can be held liable for an employee's defamatory statements if those statements are made in the course and scope of the employment.  *See, e.g., Rouly*, 835 F.2d at 1131-32;  *see also Lamonte v. Premier Sales, Inc.*, 776 So. 2d 493, 498 (La. App. 5 Cir. 2000).

If made in good faith, communications occurring as part of an employer's investigation of an employee's alleged wrongdoing are treated as not being a "publication," or as being subject to a qualified privilege.  *See, e.g., Sears, Roebuck, and Co., v. Danny Williams Plumbing Co.,* Civil Action No. 98-2882, 1999 WL 280439, *4 (E.D. La. 5/4/99);  *see also Espree v. Tobacco Plus, Inc.*, 772 So. 2d 389, 391-92 (La. App. 3 Cir. 2000);  *Martin*, 588 So. 2d at 1333-34.  "Good faith" or a "lack of malice," in the context of defamation, means that the person making a statement honestly believes that it is true and has reasonable grounds for believing it to be true.  *Rouly,* 835 F.2d at 1130;  *Martin*, 588 So. 2d at 1333.

Plaintiff's analysis of his defamation claims against FALMS and Motes is extremely limited and, thus, not extremely helpful to the Court's consideration of these claims.  The analysis that is offered appears to focus only on statements that allegedly caused, in whole or in part, his termination.[12]  These statements fall into two categories.

---

[12]      *See* Plaintiff's Opp. at 18-20.  Plaintiff's opposition memorandum does not discuss any defamatory statements allegedly made by Motes following Plaintiff's termination regarding the

The first category is statements allegedly made by Motes to other FALMS employees outside of the context of the investigation by Williamson and Ellison. The only evidence of such statements, however, is that found in Williamson's notes of her investigation.[13] Because he is a party to this action, Motes' account to Williamson of statements that he previously had made to other employees about Plaintiff, as reflected in the investigation notes, is admissible. *See* Fed. R. Evid. 801(d)(2) (admissions by a party). Statements to Williamson by other employees, such as Angelica Jeter, who are not parties to the lawsuit, however, regarding things Motes had told them on prior occasions, have not been demonstrated to be legally admissible within the confines of the hearsay rule. Thus, in the absence of an affidavit from Jeter and the other employees to whom Motes allegedly made these statements – declaring that Motes actually made the statements in question – the Court does not consider them as providing bases for Plaintiff's defamation claims.[14]

---

basis for that termination. Nor will the Court search all of the materials submitted by the parties to determine if any such statements exist.

[13]     *See* Williamson's May 4, 2004 investigative notes, Exhibit 5A to FALMS' Mem., and Exhibit A to Motes' Memorandum in Support of Defendant W. David Motes' Motion for Summary Judgment ("Motes Mem.").

[14]     FALMS' discussion of Williamson's notes in its analysis of Plaintiff's discrimination claim focuses only on what the interviewees told Williamson that he or she personally had heard or observed Plaintiff say or do. The Court's analysis is likewise so limited. As previously explained, it is the fact that these words were spoken to Williamson, rather than the actual truth of those statements, that is relevant to the Court's evaluation of Plaintiff's discrimination claim. In the context of the defamation claim, there does not appear to be any dispute that, on May 3-4, 2004, certain employees told Williamson that Motes had told them things Plaintiff allegedly had said or done. In the absence of affidavits, declarations, or deposition testimony (or a demonstration of their legal unavailability) from those employees indicating whether or not Motes actually said those things to them, however, the Court, on the showing made, declines to consider those statements as potential factual bases of Plaintiff's defamation claims.

The second category consists of statements that Motes allegedly made to Williamson as part of her investigation of the complaint lodged against Plaintiff. These statements are admissible as non-hearsay because Williamson heard them directly from Motes and not another employee, and they are offered by Plaintiff to establish that the words were spoken by Motes. Further, the statements likewise qualify as party admissions by Motes. *See* Fed. R. Evid. 801(d)(2).

Given that *Plaintiff's* discussion of his defamation claims is limited to the issue of good faith/malice in the context of privilege, the Court will assume for purposes of these motions that all admissible, defamatory statements that have been alleged and are at issue were privileged *if* they were made in good faith by Motes.[15] Certain of these statements – particularly those regarding Plaintiff's alleged crude comments about numerous female employees' physical appearances and his corresponding desire to have sex with those employees – purportedly were told only to Motes in private conversations and are such that they likely were either largely true or not. Plaintiff's and Motes' disagreement regarding the truthfulness of these statements, that is, whether Plaintiff in fact made these remarks to Motes, presents a credibility question as to Motes' good faith that the Court does not find appropriate to determine through a summary judgment motion.[16]

_____

[15]      If Plaintiff desired to have Motes' statements to employees other than Williamson analyzed differently, he could have included such an analysis in his opposition memorandum.

[16]      That the Court does not find summary judgment to be appropriate on this issue, however, is far from a prediction of success on the merits. In arguing the falsity and maliciousness of the allegations made against him by his former co-workers, Plaintiff points to uncontroverted evidence regarding his unblemished employment record prior to beginning work at FALMS, including a statement from his prior assistant, who is a female. On the other hand, Defendants point to Williamson's notes regarding statements allegedly made to her by Bourgeois and other FALMS employees. That Plaintiff had no history of sexual harassment complaints prior to commencing

The Court is aware that Motes' motion also contests whether Plaintiff can satisfy the "defamatory statement" and "resulting injury" elements of his defamation claims. Considering the crudeness of certain of the statements attributed to Plaintiff, and that Plaintiff allegedly made them about several of the female employees that he either hired or directly supervised, the Court believes that the jury reasonably could find Motes' alleged accusations to be extremely harmful to Plaintiff's reputation for good character and to his current and future employment. Further, the only evidence before the Court suggests that FALMS' termination decision rested on the "cumulative evidence" resulting from Williamson's and Ellison's inquiries. Given the foregoing, the Court likewise declines to dismiss Plaintiff's claims on the basis of the "defamatory statement" and "resulting injury" elements.

In its motion for summary judgment, FALMS additionally contends that it cannot be held vicariously liable, as Motes' employer, for comments allegedly made by Motes outside of the course and scope of his employment. The Court agrees. *See, e.g., Trentecosta*, 703 So. 2d 558 (for vicarious liability to be imposed defamatory statement must be in course and scope of employment); *Lamonte*, 776 So. 2d at 498 (same). The Court is not entirely convinced, however, that FALMS cannot be held vicariously liable for statements that Motes allegedly made to

---

work at FALMS does not mean that the jury will not conclude that his behavior later changed, or simply that he never "got caught" at his previous job. Further, if the other co-workers testify consistently with Williamson's notes, and the jury chooses to believe that Plaintiff did make a hand gesture referring to a client's breasts in an analyst meeting, that Plaintiff made inappropriate comments to Nancy Stroebel and Kim Schroeder, and/or that Bourgeois is a more credible witness than Plaintiff, the jury may likewise decide that Plaintiff made some or all of the comments attributed to him by Motes, or at least that Motes had reasonable grounds for believing them to be true.

22

Williamson during the course of her investigation *if* Plaintiff demonstrates at trial that those statements were not made in good faith.  Thus, the Court declines to grant summary judgment on this claim in FALMS' favor.

The Court realizes that, if Plaintiff meets this burden, Motes' behavior will be in the nature of intentional tort.  Employers can be held vicariously liable, however, for such torts if the tortious conduct was "so closely connected in time, place, and causation to [the employee's] employment duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests." *Baumeister v. Plunkett*, 673 So. 2d 994, 997-98  (La. 1996).  In this instance, FALMS solicited the information provided by Motes as part of its investigation of another employee's complaint.  It then decided, through employees Williamson, Ellison, and Roniger, that no further investigation of the matter was necessary and, based on all of the information obtained, including Motes's statements, that Plaintiff should be terminated.  Given these facts, the Court cannot determine, on the showing made, that FALMS cannot be held vicariously liable as a matter of law for any actionable, defamatory statements made by Motes during the course of Williamson's investigation. *Compare Baumeister,* 673 So. 2d at 1000 (suggesting that sexual assault of a hospital patient by an employee charged with the duty of ensuring that patient's well-being, or sexual assault of subordinate employee ordered into the  room by the tortfeasor-supervisor, or threatened her with the loss of her job, might be appropriate grounds for vicarious liability); *Lebrane v. Lewis*, 292 So. 2d 216, 218  (La. 1974) (vicarious liability imposed based on supervisor's stabbing of subordinate

23

employee found to be "reasonably incidental" to supervisor's duties in connection with firing the employee and removing him from the premises).

### CONCLUSION

As stated herein, the parties' motions to strike are granted in part and denied in part. Regarding the motions for summary judgment, the Court finds, as to Plaintiff's discrimination claims, that no genuine issue of material fact exists and that FALMS is entitled to a judgment as a matter of law.   As to Plaintiff's defamation claims, genuine issues of material fact exist regarding Motes' good faith and FALMS' vicarious liability.  Thus, the motion for summary judgment filed by Defendant FALMS is granted in part and denied in part, and the motion for summary judgment filed by Defendant Motes is denied in its entirety.

New Orleans, Louisiana, this  22nd  day of November 2006.

KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE